Edward V. Thebaud, Respondent, *v.* Phœnix Ins. Co., Appellant.

*N. Y. Supreme Court, First Department, General Term, May 24, 1889.*

1. *Insurance. Marine.*—It is incumbent upon the insured, in order to succeed in an action on a policy of marine insurance, to establish that, at the time the vessel starts upon her voyage, she is seaworthy.

2. *Same. Warranty.*—The implied warranty of seaworthiness is satisfied if, at the commencement of the risk, the vessel is made as seaworthy as she is capable of being made, though it may not make her as fit for the voyage as would have been usual and proper if the adventure had been that of sending out an ordinary seagoing vessel.

3. *Same. Question of law.*—The question of seaworthiness is peculiarly a question of fact for the jury; but, where the evidence is without dispute that there has been no compliance with the law, there is no question for the jury.

Appeal from a judgment entered on a verdict.

*G. A. Black,* for appellant.

*H. Putnam,* for respondent.

Van Brunt, P. J.—This action was brought to recover

29

upon the defendant's policy of marine insurance which insured the steamboat *Dos Hermanos* in the sum of $5,000, at and from Philadelphia to Frontera, Mexico. The vessel sank in the ocean on September 13, 1884.

The issues tried were that the *Hermanos* was not seaworthy for the voyage, that she deviated, and therefore discharged the policy.

In the consideration of the questions raised upon this appeal, it will not be necessary to consider other than the first above mentioned.

In order that the plaintiffs should succeed in this action, it was incumbent upon them to establish that, at the time the vessel started upon her voyage, she was seaworthy. This obligation was acknowledged by the allegations of the complaint, that the steamboat departed from the port of Philadelphia upon said voyage on or about the 17th day of August, 1884, being then staunch, strong, and in every respect seaworthy, with competent officers and crew.

It is conceded that at least a part of the voyage which the steamer was expected to make was required to be upon the open ocean, and the question presented is as to what degree the proof should go in establishing the seaworthiness of the vessel insured.

It is claimed, upon the part of the defendants, that there being no exception whatever in the policy, it being the ordinary marine policy insuring the steamboat against marine risk, that it was necessary, before there could be a recovery for the plaintiff, to prove that the vessel was seaworthy as a seagoing vessel. Upon the other hand, it was claimed by the plaintiff that the vessel having been built simply for river navigation, it was not necessary for them to show that she was equal to a regular seagoing steamer but all they were required to establish was that she was good and staunch of her class, and that a proper outfit had been added for the ocean voyage.

Strange as it may appear, when we consider the number

of adventures which would be calculated to raise the question here involved, we have been unable to find any principle established by the adjudicated cases which controls the construction of a marine policy in this respect, where such policy is entirely silent as to the dimensions and capacity of the vessel insured. The ordinary rule is that parol evidence cannot be admitted to contradict or qualify the implied warranty of seaworthiness any more than it could have been if the warranty had been express.

If this were the law, it would be perfectly clear that no recovery could be had upon the policy in question, because the vessel insured was not seaworthy for the voyage for which it was insured, in the ordinary acceptation of the term. And the only difficulty is as to whether, in the consideration of a policy of insurance of this kind, it is admissible to consider extraneous facts, for the purpose of showing that there has been a waiver of the rigor of the warranty implied in the policy.

In the case at bar it is not necessary to determine this question, because, if we concede, for the purposes of the decision of this case, that the latter rule must prevail, yet even under this construction, no recovery could be had.

It is clear that the claim that all that it was necessary to show in respect of seaworthiness was that the vessel was strong and staunch for the purpose of river and smooth water navigation, is not well founded, and none of the cases which are cited by the learned counsel for the plaintiffs in any way support any such proposition.

The case of Burges *v.* Wickham (3 Best & Smith, 669), establishes no such proposition as is claimed for it. In that case, a policy had been issued, insuring a boat called the Ganges, from Liverpool to Calcutta, built for navigating the Indus river, and on this account unfit generally for ocean navigation. The assured had, before the policy was entered into, informed the defendants of the original construction and character of the Ganges, telling them, at the

same time, that additional strengthening was in progress, and that everything that possibly could be done by temporary appliances to render a vessel of her construction as strong as could be made, to encounter the perils of the voyage, would be done, and the evidence showed that an additional premium was paid, commensurate to the increased risk arising from the character of the vessel. In that case, it was held that the warranty of seaworthiness must be taken to be limited to the capacity of the vessel, and, therefore, was satisfied if, at the commencement of the risk, the vessel was made as seaworthy as she was capable of being made, though it might not make her as fit for the voyage as would have been usual and proper if the adventure had been that of sending out an ordinary seagoing vessel.

This case extended the right to explain what was intended by the implied warranty in the policy, as far as any which we have been able to find has ever done. And the court held, that because it was a river steamer, that, therefore, the rigid warranty which would be applicable to a seagoing vessel, could not necessarily have been intended when the vessel was insured, because no such warranty could possibly have been complied with. In that case, it appeared that, because of the weakness of the vessel, an increased premium was charged. In the case at bar, no such evidence appears.

It is argued that the premium taken was a high premium, in that the insurance company took a premium showing a computation of one loss in twenty ; whereas, from the evidence in this case it would seem that it would have been more proper, if an augmented premium was to be taken, that it should have been based upon a computation of nineteen losses out of twenty.

The evidence in the case at bar, not only in respect to the question of insurance, but also in respect to another important feature of the case cited, utterly fails. The judgment of the court in the case cited was based upon this consideration :

" Taking all these considerations into account I think that on such an adventure as this, viz.: sending a river steamer across the ocean, the warranty of seaworthiness was complied with if as much was done to make her fit for the voyage as was in such adventures usual and proper, though it might not make her as fit for the voyage, as would have been usual and proper if the adventure had been that of sending out an ordinary seagoing vessel." And it was upon this consideration, and because the evidence showed that everything had been done to render the vessel as fit for the voyage as was possible, that the recovery was sustained.

There is no evidence of this kind in the case at bar. All that the evidence shows is that the vessel was fit for river and smooth water navigation. There was not a particle of evidence tending to show that any substantial precaution was taken to protect her against the dangers to which a vessel of this construction was peculiarly subject, namely: the action of the sea upon her hull. The case is entirely barren of any evidence tending to show that any extraordinary precautions of any kind whatever were taken; and it would appear, from the evidence, that the vessel was lost because of the very reasons which might have been anticipated, and perhaps might have been guarded against.

If it was necessary, in order to comply with the warranty, to show that everything which could be done had been done to render this vessel fit for the voyage, taking into consideration her structural weakness, it was necessary that the plaintiffs should have proved that fact, and not limited themselves to evidence tending to show that the vessel was staunch and strong of her class, and was fit for river navigation, when she was insured for an ocean voyage. This was no proof of the allegation contained in the complaint that she was strong, staunch and seaworthy at the time she commenced her voyage.

Our attention has been called to another case (Bouillon v. Lupton, 15 Com. Bench, N. S., 113 ), in which three steam-

ers, intended for the navigation of the Danube, were insured at and from Lyons to Galatz, with leave to call at all ports and places in the Mediterranean for all or any purposes, beginning the adventure at Lyons. These vessels left Lyons and duly arrived at Marseilles. All three of the vessels were in a fit and proper state for the voyage down the Rhone to Marseilles, but from the nature of the navigation they could not, on leaving Lyons, be in a state of readiness as to masts and sails, chains and anchors, sea, crew, etc., for the sea portion of the voyage to Galatz. They all left Marseilles properly manned and equipped for the residue of the voyage, and it was held that the implied warranty of seaworthiness was complied with. The question discussed upon this point was a claim made upon the part of the insurance company, that the warranty applied to the whole voyage, and that the change in the condition of the vessels at Marseilles did not fulfill the warranty; and that these vessels proceeded from Arles to Marseilles upon the Mediterranean without having been prepared for a sea voyage.

In discussing this question, the court say: "There is an implied warranty, in every insurance of a ship, that the vessel shall be seaworthy. By this it is meant that she shall be in a fit state as to repairs, equipment and crew, and in other respects, to perform the voyage insured, and to encounter the ordinary perils at the time of sailing under it. That is the ordinary rule. If it be applicable here, of course there can be no doubt that the defendants are right, and ought to succeed, because the warranty of seaworthiness has not been complied with, at least in respect to the whole voyage. If the assurance attaches before the voyage commences, it is enough that the state of the ship be commensurate to the defendants' risk; and if the voyage be such as to have required any different complement of men or state of equipment in different parts of it, as if it was a voyage down a canal or river, and thence to and upon the open sea, it is enough if the vessel is, at each stage of the

navigation in which the loss happens, properly manned and equipped for it.

It thus appears that the last case cited in no way conflicts with any rule which has been established with reference to the implied warranty attaching to policies of marine insurance. And the later case of Clapham *v.* Langton (5 Best & Smith, 2 B. R., 729) is in entire accord with the principles which have been laid down. In that case the action was brought upon a policy of insurance upon a ship at and from the Tyne to Odessa, or another port, in the Black sea. The length, breadth, draught and tonnage of the vessel were specified in a memorandum on the face of the policy at the time of making the same. The defense was unseaworthiness. On the trial it appeared that before the execution of the policy the plaintiff wrote letters to the defendant, describing the dimensions, etc., of the ship, and stating that she was a new iron steamer, and took no cargo, but only coals enough for her use to Gibraltar, where she would coal again. The dimensions of the ship were also stated in a memorandum on the policy. The ship was intended, after accomplishing the voyage, to be employed in river navigation only, and was, as to her hull, built and adapted to such navigation exclusively, and could not, by any strengthening appliances, be rendered fit to encounter the ordinary perils of the voyage. But before commencing the voyage, certain appliances were put into, and upon, her hull to assist her in encountering the perils of the voyage.

The judge directed the jury that if the plaintiff had, before the execution of the policy, brought to the knowledge of the defendant the nature and description of the vessel, and the more than ordinary risk that she would necessarily encounter on the voyage, and if the vessel, at the time of commencing the voyage, had been, by the strengthening, made as seaworthy as a vessel of such nature and description could reasonably be made, they should find for the plaintiff.

The jury found for the plaintiff, and it was held that the

direction was right in that the warranty of seaworthiness, under the circumstances, disclosed in this case, was limited to the capacity of the vessel, and, therefore, was satisfied when such strengthening appliances had been resorted to as made the vessel as seaworthy as a vessel of such nature and description could reasonably be made.

Upon an examination of the opinions, there seems to have been a delightful contrariety of opinion, and although the court agreed that the judgment should be affirmed, they arrived at this conclusion for different reasons, and no opinion whatever was expressed upon the question whether parol evidence, as to the character of a vessel is admissible to qualify the ordinary warranty of seaworthiness in a policy, and it would seem that the turning point of the case was that the policy contained the dimensions of the vessel, which showed that she could not possibly be seaworthy as a sea-going vessel. This conclusion, perhaps, is somewhat conjectural, as the case is not explicit on this point, and the only point which seems to be established is, that where a vessel is made as seaworthy for the voyage as a vessel of such nature and description could reasonably be made, the chandler of the vessel being known to the insurer, there is no breach of the implied warranty of seaworthiness. We have not thought it necessary to comment on the evidence in this case in detail, because of the principle on which it is sought to uphold the verdict. It does not seem to be contended that if the rule which has been laid down as the one most favorable for the plaintiff which can possibly govern contracts such as the one sued upon is to prevail, there is any evidence that there has been a compliance with its requirements.

Indeed, the whole course of the plaintiff's argument is based upon the claim that if the defendants knew that the vessel was built for river navigation, all that it was necessary for the plaintiffs to prove was that she was good and staunch

of her class, notwithstanding the voyage insured against was an ocean, and there was no necessity to prove that any additional precautions, which were at all substantive, had been taken because of the additional risk, nor that the owner had put the vessel in the state in which she ought to be put on beginning such a voyage. It was held in the cases of Burges *v.* Wickham and Clapham *v.* Langton (*supra*) that the assured warrants that she shall be put in that state.

The only other point necessary to be considered is the claim made on the part of the respondent that the question of seaworthiness is always one of fact to be determined by the jury ; and our attention is called to the decision of the court of appeals in the case of Walsh *v.* Washington Insurance Co. (32 N. Y. 427) where the court say that " the jury having found for the plaintiff, and the court below having approved the findings upon the facts, there seems to be no serious question for consideration here in regard to the seaworthiness of the vessel, for it is agreed by all the authorities that this is peculiarly a question of fact for the jury.

This case fails to establish any such claim as is made for it. Undoubtedly, the question of seaworthiness is peculiarly a question of fact for the jury ; but where the evidence is without dispute that the voyage is of a character for which the vessel is not fitted, and that no substantial precautions whatever have been taken to provide for perils which must necessarily be encountered, there seems to be no question for the jury, because there has been no compliance with the law, and the jury have no power to find contrary to the evidence.

If there is any conflict of evidence upon the subject, and the jury find, and the verdict is approved by the court, of course the court of appeals has no power to review the same upon the facts.

The conclusion at which we have arrived is that there was a breach of the implied warranty contained in the policy, in that there was no attempt to put the vessel in the state in

which she ought to have been put upon the beginning of an ocean voyage.

The judgment must be reversed and a new trial ordered, with costs to the appellant, to abide the event.

MACOMBER, J., concurs.

BARTLETT, J.—I concur. I think the testimony established the unseaworthiness of the vessel, tested by any rule properly applicable to the case.

*H. Putnam*, for respondent.

